J. BYRON SAUNDERS V. STATE

No. 31,935. October 5, 1960

State's Motion for Rehearing Overruled November 16, 1960

State's Second Motion for Rehearing Overruled December 14, 1960

DAVIDSON, Judge, concurred.

WOODLEY, Judge, dissented.

*Douglass D. Hearne, Cofer and Cofer,* Austin, for appellant.

*Les Procter,* District Attorney, *David S. McAngus,* First Assistant District Attorney, and *Leon Douglas,* State's Attorney, all of Austin, for the state.

MORRISON, Presiding Judge.

The offense is perjury; the punishment, two years.

We are met at the outset with the serious question of whether false testimony given before the Legislative Investigating Committee of the 1957 Regular Session of the Texas Legislature constitutes the offense of perjury or false swearing. The Legislature of this State, in its wisdom, has created two separate and distinct offenses covering the subject of bearing false witness and has assigned two different punishments therefor. The maximum punishment for false swearing is five years, while that for perjury is ten. By the enactment of Article 306, V.A.P.C., the Legislature has indicated that it intended the more severe punishment to be meted out to those who testify falsely in any stage of a *judicial* proceeding or before a grand jury, while the lesser punishment is assigned to those who testify falsely outside the course of a judicial proceeding. The question before us here appears to have been answered in Van Arsdale v. State, 149 Tex. Cr. Rep. 630, 198 S.W. 2d 271, where this Court said, "It follows that if there was no legal *judicial proceeding* pending, the false oath could not constitute perjury," but we will pursue the matter further.

We observe at the outset that there does not appear any reported decision in which an accused was prosecuted for perjury committed before a legislative committee since the enactment of the statute 120 years ago.

Article 302, V.A.P.C., goes slightly further than Article 306, supra, and authorizes a prosecution for perjury in any case where the oath is "required by law" or is necessary "for the ends of public justice." We shall discuss each of these phases of the statute in more detail.

Nowhere in our statutes may the requirement be found which demands that witnesses who testify before the Legislature or any of its committees shall be sworn. Article 5429a, V.A.R. C.S., merely *empowers* members of the Legislature to administer oaths to witnesses who appear before either House or a com-

mittee thereof and does no more than add members of the Legislature to those enumerated in Article 26, V.A.R.C.S., as those who are authorized to administer oaths.

Can it be said that an oath administered by any of those persons, such as a notary public, enumerated in Articles 26 or 5429a, supra, is, per se, one which is required by law? We think not. We must now see if House Simple Resolution No. 165, which created this committee, makes the oath of a witness who appeared before such committee one which is required by law. While it is true that Article III, Section 11, of the Constitution empowers either House, acting alone, to determine the rules of its own proceedings, it in nowise empowers either House, acting alone, to enact a law. Furthermore, the resolution itself does no more than the statutes heretofore mentioned and authorizes the administering of oaths. No action of the committee itself might grant it greater powers than had been granted by the House which created the committee.

We then come to the question of whether or not the oath taken by appellant was one which was necessary for the "ends of public justice." This is a broad term, but so far as we have been able to ascertain has been applied exclusively to the enforcement of the law or preserving the integrity of the judicial process.

The only time we find the italicized phrase in Words & Phrases is in People v. Vaughn, 61 N.E. 2d 546, wherein it was held that a judge might call another grand jury when it was discovered that certain indictments had been returned by a prior illegal grand jury. There the statute empowered him to call such a grand jury "at any time when he shall be of the opinion that *public justice* requires it."

Since the Legislature which created the committee in question has not seen fit to require an oath of the witnesses appearing before it, this Court would be cast in the light of legislating were we to hold that the ends of public justice required that witnesses who come before a legislative committee be sworn. To say that public justice required the oath to be administered such witnesses would be to say that public justice required the administering of *any* oath. This we cannot do because we would thereby nullify Article 310, V.A.P.C., which denounces false swearing.

In view of this disposition of this cause, it will not be necessary to discuss the many other questions raised in appellant's exhaustive brief.

Because the offense here alleged is false swearing and not perjury, the judgment is reversed and the prosecution is dismissed.

DAVIDSON, Judge (concurring).

I concur in the opinion of my brother Morrison, Presiding Judge, but feel that I should record my individual views in a concurring opinion.

On February 20, 1957, the House of Representatives of this State, at the Regular Session of the 55th Legislature, passed and adopted House Simple Resolution No. 165.

By that resolution, the Speaker of the House was instructed to appoint a special committee of five members to investigate the affairs of a certain named insurance company, and all insurance companies, associations, or corporations which the committee deemed necessary, "to determine the adequacy or inadequacy of Texas' present insurance and/or securities laws."

Power to issue process for witnesses was conferred upon the committee, with instructions to report any refusal of witnesses to appear in answer to subpoenas. The committee was authorized to formulate its own rules of procedure.

The Speaker of the House of Representatives appointed the five members of the committee, as directed. The members so appointed promulgated their own rules, among which was that all witnesses appearing before the committee would be placed under oath "as authorized by the said House Simple Resolution No. 165, and by the laws of the State of Texas."

Appellant was subpoenaed and, in obedience to such subpoena, appeared before the committee as a witness and was duly sworn. He testified at length. His testimony was, in certain particulars, false and deliberately given.

The indictment alleged the foregoing as facts, and charged that the offense of perjury had been committed by appellant by reason of the false testimony. A conviction for that offense resulted, with punishment assessed at two years in the penitentiary.

At the outset of and throughout the trial, appellant insisted, by motion to quash and otherwise, that the indictment did not

charge the crime of perjury and that his conviction thereunder would be null and void.

This contention is predicated, primarily, upon the proposition that false testimony before the special committee did not and could not constitute perjury under the laws of this state.

The question for determination is whether the crime of perjury may be committed by \the making of a false statement under oath before and under the questioning of a special committee of the House of Representatives of this State whose sole authority to exist and to summon and interrogate witnesses stems from and is based upon a simple resolution passed by such House of Representatives.

The crime of perjury in this state is denounced in Chap. 1 of Title 8 of our Penal Code and by Arts. 302 and 306 contained in that chapter.

Art. 302 reads as follows:

"Perjury

"Perjury is a false statement, either written or verbal, deliberately and wilfully made, relating to something past or present, under the sanction of an oath, or such affirmation as is by law equivalent to an oath, where such oath or affirmation is legally administered, under circumstances in which an oath or affirmation is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice."

Art. 306 reads as follows:

"In what sort of proceeding

"All oaths of affirmations legally taken in any stage of a judicial proceeding, civil or criminal, in or out of court, or before a grand jury, are included in the description of perjury."

Inasmuch as there is no semblance of a judicial proceeding involved here, Art. 306 could have no application.

If the crime of perjury is here charged, it is by reason of Art. 302, P.C.

That statute sets forth three fact situations whereby the crime of perjury may be committed. These are: (a) where the oath under the sanction of which the false statement is made was required by law; (b) where the oath under the sanction of which the false statement is made "is necessary for the prosecution or defense of any private right"; and (c) where the oath under the sanction of which the false statement is made is "for the ends of public justice."

It is the oath and the circumstances under which the oath is taken that are determinative. It is immaterial, therefore, how false the statement may be. Perjury cannot be predicated thereon unless the oath under the sanctity of which the false statement is made is authorized under any one of the three specifications.

It is only the first specification (a) that could be material to the determination of the question here, because under specification (b) the "prosecution or defense of any private right" can be asserted or claimed only in the courthouse in a court of competent jurisdiction in a judicial proceeding in a civil suit between parties or in the defense of a criminal case. There exists no other tribunal with power to make any such determination.

It follows, therefore, that perjury committed under the sanction of an oath necessary for the prosecution or defense of any private right can arise only in a judicial proceeding.

Such is also true of specification (c), where the oath is "for the ends of public justice."

The terms "ends of public justice" and "public justice" do not appear to have been judicially defined by the courts—for the reason, no doubt, that such terms speak for themselves. I am not here concerned so much with the meaning of those terms as I am with the medium thru which public justice is brought into fruition and maintained. The word "public" has reference to the people, the state, the nation, or the community at large, and is the opposite of "private."

It is the city, the state, or the nation, as the representative of the public, therefore, that has the power and duty to see that the rights of the public and that public justice are preserved and maintained. Hence, perjury committed under the sanctity of an oath "for the ends of public justice" must be brought by and in the name of the state in either a criminal proceeding or in a civil

action to redress or prevent a public wrong. It is only in such proceedings that public justice could be enforced or maintained.

Neither specification (b) nor specification (c) is therefore applicable.

The question, then, narrows itself to a determination of whether the oath under the sanction of which appellant gave his false testimony before the investigating committee was one "required by law" as pointed out in specification (a), as that term is used in Art. 302, P. C.

The cases which have been before this court wherein a conviction for perjury was authorized upon a false affidavit or statement outside of and unconnected with a judicial proceeding are based upon the proposition that there must exist a valid statute, a valid law, which requires the making of the affidavit or statement under oath.

Such is true of the case of Shely v. State, 35 Tex. Cr. R. 190, 32 S.W. 901, where it was held that a false affidavit by a deputy sheriff to an account for carrying prisoners constituted perjury, because the affidavit to the account was required by law to be made as a condition precedent to a valid claim for the services rendered.

Such was the rule applied in O'Bryan v. State, 27 Tex. App. 339, 11 S. W. 443, where it was held that "The affidavit made by a public free-school teacher to the voucher or check drawn by the trustees on the county treasurer for his pay * * * is a legitimate subject on which perjury may be assigned"—all because the affidavit was one required by law to be made.

It must be remembered that in these cases the affidavit was required by law to be made in order that someone might obtain or pursue a private right. Either the maker of the affidavit or some other person was to receive a benefit, privilege, or right from the affidavit, without which such could not have resulted.

The making of the affidavit was, by law, a condition precedent to the exercise of a right, benefit, or privilege.

The case of Langford v. State, 9 Tex. App. 283, is in point. In that case the accused, desiring to prosecute one Flint for the theft of a mule, went before a justice of the peace and made an affidavit to that effect.

For the making of the false affidavit he was tried and convicted of the crime of false swearing. The accused contended that if he was guilty of any offense it was that of perjury, because the affidavit was one "required by law," within the meaning of the definition of perjury.

In sustaining appellant's contention, the court made clear, by the following language, the conditions under which false affidavits or testimony not made in a judicial proceeding come within the definition of perjury:

"But let us view it in another light. We find that if the oath is necessary for or to the ends of public justice, then it would be perjury. If Mr. Flint had stolen the mule, public justice demanded that he should be prosecuted. The whole people of this State had an interest in his prosecution. In order, then, that the ends of public justice might be attained by the punishment of the guilty, the law required this complaint to be made and sworn to. This is the beginning of the prosecution, to the end that public justice may be had in the premises.

"Again: if the oath is required by law, or, to use the language of the Code, 'under circumstances in which an oath is required by law,' then it would be perjury. A. desires to prosecute B. for theft—a felony. The grand jury is not in session. What must he do? The law requires that he make a complaint before a proper officer, in writing, charging B. with the theft? [sic] Before the officer can legally issue his writ for the arrest of B., the law requires that the complaint shall be sworn to. Hence we conclude that the affidavit, or complaint, upon which the false-swearing was assigned was required by law. The *oath* was taken, then, 'under circumstances required by law.'

"We are not to understand that the law *must require* the defendant, or any particular individual, to make the oath; but, if the law requires such an instrument to be sworn to (before it can have a legal standing) by any person, then, if taken, it would be under circumstances *required* by law."

Finally, then, the question in the instant case is whether the oath under the sanction of which appellant testified before the committee was "required by law."

The special committee depended solely and alone for its existence and power upon the legal effect of the simple resolution. Did

that simple resolution create a law by which an oath was required to be taken by witnesses testifying before that committee?

A law cannot be created or amended by a simple or concurrent resolution of the legislature of this state, because a law can become such only by a bill, as required by the Constitution and laws of this state. Art. 3, Sec. 30, Const. of Texas; City of San Antonio v. Micklejohn, 33 S. W. 735; El Paso Gas, Electric Light & Power Co. v. City of El Paso, 54 S. W. 798; Conley v. Texas Division of United Daughters of the Confederacy, 164 S. W. 24; McCarthy v. McElvaney, 182 S.W. 1181; Brown v. National Loan & Investment, 139 S. W. 2d 364; Mosheim v. Rollins, 79 S. W. 2d 672; State of Texas v. Clements, 319 S. W. 2d 450; Caples v. Cole, 102 S. W. 173; and 39 Tex. Jur., p. 12, Sec. 4.

It is apparent, therefore, that regardless of the powers conferred and contained upon and in the simple resolution, such was not a law of this state.

To me, the conclusion is inescapable that appellant's alleged false testimony, made before the special committee, did not constitute the crime of perjury; that the indictment failed to charge appellant with the offense of perjury; and that his conviction for that crime under such indictment was void and unauthorized.

Art. 5429a, R. C. S., neither demands nor authorizes a contrary conclusion.

That statute does nothing more or less than authorize members of the legislature to administer oaths and make it unlawful for witnesses to fail or refuse to testify before committees of the legislature. The statute does not require a witness to testify before a committee—that is, not affirmatively. It only punishes the failure or refusal to testify. There is no statute in this state which requires that witnesses be sworn in the trial of cases.

Under Art. 5429a, R.C.S., witnesses could testify without being sworn the same as if they had been sworn.

Not only is the above decisive of the question here, but in addition it must be remembered that, whatever were the powers conferred by Art. 5429a, the offense of perjury was not applied thereto. For that crime to be committed by virtue of that article a committee created by law was necessary in order that whatever the committee did be "required by law"—all of which brings

again into focus the fact that the special committee created by simple resolution was not created by law.

WOODLEY, Judge (dissenting).

The majority conclude that the offense committed by appellant when he gave false testimony before a committee of the House of Representatives was not perjury because the oath administered to him by the chairman of the committee was not administered "under circumstances in which an oath or affirmation is required by law, * * * or for the ends of public justice." I cannot agree.

Art. 5429a V.A.C.S. was enacted by the 45th Legislature as a general law. It empowers the chairman of *"a committee of either house of the legislature"* to administer oaths "to witnesses in any case under their examination."

The same statute makes it an offense for any person summoned as a witness *"by authority of either house"* to make default, or refuse to answer any question pertinent to the question under inquiry. Refusal of such a witness to testify is made an offense though the answer may tend to incriminate the witness, the statute granting immunity to the witness required to so testify over his objection upon that ground.

In Ferrantello v. State, 158 Tex. Cr. R. 471, 256 S.W. 2d 587, a conviction under Art. 5429a V.A.C.S. was affirmed, the defendant having refused to answer questions propounded to him after he was sworn as a witness before a House Committee authorized by simple house resolution.

Appellant Saunders was subpoenaed to appear before a similar House Committee and was sworn as a witness. He answered the questions propounded to him concerning checks received by him while Insurance Commissioner from I.C.T. Discount Corporation, but his answers deliberately and wilfully made under sanction of such oath were found by the jury to be false and untrue.

Art. 5429a V.A.C.S. required the Appellant Saunders to appear before the committee; empowered the chairman of the committee to administer the oath to him, and required the witness to testify and answer questions pertinent to the question under inquiry.

In addition, the simple resolution authorizing the committee which called appellant to testify empowered the committee to formulate its own rules relating to procuring and hearing of evidence, and the committee decided that the witness should be sworn.

It is true that no statute specifically requires an oath to be administered to a witness before a committee of the house, but there is likewise no statute in Texas specifically requiring witnesses to be sworn in judicial proceedings (in court).

Art. 5429a V.A.C.S. required appellant to answer the questions which he answered falsely under oath. It was not "a voluntary declaration or affidavit, which is not required by law," hence could not be "false swearing" under Art. 310 P.C.

MOTION FOR REHEARING

WOODLEY, Judge.

Rehearing denied.

The majority overrule the state's motion for rehearing without written opinion, thereby declaring the law of this state to be that a witness who appears before a legislative committee in obedience to subpeona, takes the oath which the chairman of the committee is authorized by statute to administer; is interrogated by the committee, testifies and deliberately gives false answers to proper questions pertinent to the matter under inquiry by the committee, is not guilty of perjury because the oath administered was not required by law, and was not necessary for the ends of public justice.

No authority is cited and I know of none which supports the conclusion that it is not necessary for the ends of public justice that a witness who is required by statute to appear and answer questions propounded to him by a committee of the legislature be sworn to tell the truth.

The holding that the giving of false answers under oath to questions propounded by a legislative committee constitutes the offense of false swearing is also not supported by any authority and is contrary to Art. 310 P.C. defining false swearing, construed in connection with Art. 5429a V.C.S.

The effect of the decision will leave the law of this state in this condition.

A committee of the legislature or of either the House or Senate may summon a witness "to give testimony" before it upon a matter under inquiry. If the witness "makes default" he is subject to fine and imprisonment. If he appears, the chairman is authorized by law to administer to him the oath as a witness. If he "refuses to answer any question pertinent to the question under inquiry" he may be fined and imprisoned in jail.

Being required under penalty of a fine and jail term to obey the summons as a witness "to give testimony" he is not privileged to refuse to testify, though his testimony may "tend to disgrace him or otherwise render him infamous." If he is required to testify over such an objection, the statute grants him immunity.

The witness may, however, under the majority opinion herein, with impunity, give false answers to the questions he is required under penalty of law to answer and the giving of such answers deliberately false cannot be punished under the perjury statute or under Art. 5429a V.C.S.

It is inconceivable to me that the majority could say that one summoned "to give testimony" will be heard to say that the oath lawfully administered to him as a witness is not an oath "required by law."

More shocking is the holding of the majority, upon which future prosecutions may rest, that false answers under oath to questions the witness is required to answer under penalty of being fined and imprisoned, may be prosecuted under Art. 310 P. C. as a "false statement by a voluntary declaration or affidavit, which is not required by law."

It is clear that such a *declaration* or answer *is* required by law, and is under oath, and the state could not hope to prove that such false answer *was not* required by law.

The state's motion and brief, the amicus curiae brief of the prosecuting attorney in another part of the state, point out the errors in the majority holding. The state's motion for rehearing should be granted.